IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| FARSHID DIVAFKAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:25-cv-2242 (AJT/LRV) |
| TODD LYONS, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Before the Court is Farshid Divafkan's ("Petitioner") Petition for Writ of Habeas Corpus,

[Doc. No. 1] (the "Petition"), seeking release from Immigration and Customs Enforcement ("ICE")

custody and arguing that his ongoing detention violates (1) the Immigration and Nationality Act 8

U.S.C. §1101 *et seq.*; (2) the bond regulations; and (3) his fifth amendment due process rights.

Upon consideration of the Petition, the memoranda in opposition thereto [Doc. No. 6], and for the

reasons stated herein, the Petition is **GRANTED**.

## I.   BACKGROUND

Petitioner is a 29-year old native and citizen of Iran who entered the United States without

inspection via the U.S.-Mexico border on or about September 11, 2024. [Doc. No. 8] at 2; [Doc.

No. 6-2] ¶¶ 5-6. He was apprehended the following day by border patrol and was initially

processed for expedited removal;[1] however, on October 28, 2024, an asylum officer determined

that Petitioner had stated a credible fear of persecution if returned to Iran, based on his conversion

---

[1] Petitioner alleges, and Respondents have not disputed, that he has been detained continuously since his initial apprehension at the border in September 2024, a period of over 15 months. *See* [Doc. No. 8] at 2, 5.

to Christianity for which he alleged Iranian authorities had pursued him.[2] *Id*. ¶ 5-7; [Doc. No. 8-1] at 22–23. On November 18, 2024, ICE issued Petitioner a Notice to Appear ("NTA") bringing various charges of inadmissibility, and Petitioner ultimately conceded the charges and filed an application for asylum and withholding of removal. *Id*. ¶¶ 8-10. The Court granted Petitioner's application for the withholding of removal to Iran, and subject to that relief, his order of removal became final on April 21, 2025 after both parties waived any appeal of that order of removal. *Id*. at 8.

Respondents claim they have submitted requests to three countries for Petitioner's removal: Turkey, Norway and Morocco.[3] Turkey and Norway declined and Morocco has yet to respond. *Id*. ¶ 13. Respondents also conducted a 90-day custody review which concluded that Petitioner should remain in detention pending third country removal efforts because he was a flight risk as a recent border entrant with limited physical presence in the U.S.; a second such review was in process as of the date of Respondents' Opposition. *Id*. ¶ 14; [Doc. No. 6] at 10. If released, Petitioner evidently plans to live with a relative at his home in Georgia; and she has submitted a notarized letter of support attesting to Petitioner's intention to comply with the conditions of his release. [Doc. No. 8-1] at 17; 57–58.

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody

---

[2] Specifically, Petitioner alleged that civilian intelligence agents of the Iranian Revolutionary Guard Corps (known in Farsi as the "Sepah") had obtained video of him participating in a Christian religious service and raided his home in search of him). [Doc. No. 8-1] at 22-23.

[3] "[T]the Secretary retains discretion to remove an alien to any country described" in the INA." 8 C.F.R. § 241.15(a).The INA designates the following countries as possible places to which an alien can be removed: (i) the country of which the alien is a citizen, subject, or national; (ii) the country in which the alien was born; (iii) the country in which the alien has a residence; (iv) a country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b).

in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court held that detention pursuant to Section 1231 is subject to an implied reasonableness standard whereby more than six months of detention is presumptively unconstitutional and habeas relief is proper – so long as the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." With respect to the absence of a significant likelihood of removal, a Petitioner must make a *prima facie* showing to that effect, which the Government may then rebut

3

with sufficient evidence. *Id.*; *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014).

### III.    DISCUSSION

The dispositive issue at this point is whether Petitioner is entitled to be released based on *Zadvydas*. In that regard, Federal Respondents concede that Petitioner has been detained longer than the presumptively-reasonable six month period under *Zadvydas* [Doc. No. 6] at 11) and the case reduces to whether there is good reason to believe that there is no significant likelihood of his removal in the foreseeable future. As outlined above, if Petitioner makes a *prima facie* showing that his removal is unlikely in the foreseeable future the government must rebut that with sufficient evidence. *Zadvydas,* 533 U.S. at 701.

The *Zadvydas* framework "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds." *Castaneda v. Perry,* 95 F.4th 750, 760 (4th Cir. 2024).  But what constitutes a sufficient showing is not settled. Some courts have opined that "[s]uccessful petitioners under the *Zadvydas* framework prototypically include persons whom the government is unable to remove, or persons who are left in a removable-but-unremovable limbo," *Euceda v. Evans*, No. 1:17-CV-256(LMB/JFA), 2017 WL 1534197, at *4 (E.D. Va. Apr. 24, 2017) (*citing Jama v. ICE*, 543 U.S. 335, 347 (2005) (cleaned up); but others caution that so long as "[p]rogress, however slow, is being made" toward removal, detention under section 1231 is constitutional. *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001). And the Fourth Circuit recently considered the extent to which that required showing can be made within the context of  "withholding-only proceedings" after post-removal order detention, that is, whether on-going proceedings to withhold removal are sufficient to show that removal is not foreseeable and concluded that "ongoing withholding-only proceedings alone are

4

insufficient to demonstrate that removal is no longer reasonably foreseeable . . . [because] if [the petitioner] does succeed, nothing would prevent ICE from removing him to another country." *Castaneda v. Perry,* 95 F.4th 750, 758 (4th Cir. 2024); *see also Euceda,* 2017 WL 1534197, at *5 ("[I]f such [withholding proceeding-related] delays were sufficient to trigger *Zadvydas*, many if not most BIA matters would be subject to parallel proceedings in district courts, given the processing times associated with such proceedings"). Nevertheless, unsettled is whether the circumstances that exist in this case at this point, where removal to the Petitioner's native country has already been withheld, and third-country removal efforts have been underway for some time with no success and uncertain prospects, satisfy the *Zadvydas* requirements for release on due process grounds.

A number of district courts that have considered similar circumstances have found that removal is sufficiently unforeseeable to require release. *See, e.g. Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025) (ordering release of Iranian national who had obtained withholding as to that country, and for whom two alternate countries of removal had been identified but had not accepted). In *Banoub v. Crawford*, No. 3:25CV917, 2025 WL 3723458, at *9 (E.D. Va. Dec. 23, 2025), respondents, like here, had made requests to three countries, at least one of which declined to accept the Petitioner and at least one more remained unresponsive at the time that case was decided. In concluding that release based on *Zadvydas* was warranted, the Court acknowledged the holding in *Castaneda* that ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable, but noted that "[a] *grant* of withholding of removal substantially increases the difficulty of removing an individual," and may even constitute 'strong evidence' that removal is unlikely to occur in the reasonably foreseeable future. *Id.* (*quoting Zavvar,* 2025

5

WL 2592543, at *7) (emphasis added). And because the respondents presented no evidence that ICE had followed up with or otherwise continued to pursue his removal to the still-unresponsive countries, the Court held that petitioner was not likely to be removed to any of the three identified countries, and ultimately had shown that his removal was not significantly likely and was entitled to relief based on *Zadvydas*. *Banoub*, 2025 WL 3723458, at *9. The Court reached its conclusion even though the Respondents argued that they were actively pursuing removal to an unnamed "fourth" country aside from the three they had previously identified, by way of what they described as a "Third Country Removal Agreement," [4] and presented evidence regarding the specific eight-step process by which such agreements are effectuated. *Id*. at *4.

Here, the record presents at least as strong a showing of non-foreseeability as in *Banoub*: two countries have declined to accept the Petitioner, and one has been unresponsive. Respondents have failed to put forth any evidence or proffers that they have identified *any* other country that makes Petitioner's removal reasonably foreseeable beyond a generalized statement that efforts to locate such a country is ongoing. *See* [Doc. No. 6-2] at 5. In short, this case does not involve delays related to pending withholding-only proceedings or ministerial or administrative processing relative to countries who have consented to accept the Petitioner, but rather diplomatic difficulties in obtaining third-country consent for removal from those countries identified as possible substitutes for Petitioner's home country with no evidence of progress in locating other substitute countries. *See Kacanic v. Elwood*, No. 02–8019, 2002 WL 31520362, *10–11 (E.D.Pa. November 8, 2002) (removal is unlikely "where there was no definitive answer

---

[4] As described in *Banoub*, Third Country Removal Agreements are effectively agreements for "bulk" removals of a specified list or category(ies) of aliens at one time, and which are generally facilitated in coordination between ICE and the State Department. *Banoub*, 2025 WL 3723458, at *4. The federal official in *Banoub* testified that in July 2025, ICE leadership directed its field offices to largely cease relying on individual requests and focus on removing aliens through these agreements. *Id*.

from the target country after several months"); *cf. Crespin v. Evans*, 256 F. Supp. 3d 641, 652

(E.D. Va. 2017) ("[I]t is undisputed that there are no diplomatic barriers to [Petitioner's]

removal, which means that the ordinary delays associated with processing his claim for

withholding . . . does not normally trigger the concerns raised in *Zadvydas*") (internal quotations

and brackets omitted).

## IV.   CONCLUSION

As detailed above, Petitioner has been in detention for the purposes of removal pursuant

to a final order of removal since April 21, 2025, a period of more than eight months and

therefore for a period beyond the presumptively-reasonable six month period established under

*Zadvydas.* He has also made the required *prima facie* showing that there is good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable future; and

Respondents have failed to present evidence sufficient to rebut that showing.[5] His continued

---

[5] Based on that detention, Petitioner seeks the following relief:
   a. Assume jurisdiction over this matter;
   b. Order that Petitioner shall not be transferred outside the Commonwealth of Virginia while this habeas petition is pending;
   c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;
   d. Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;
   e. Declare that Petitioner's detention is unlawful;
   f. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and
   g. Grant any other and further relief that this Court deems just and proper.

detention is therefore unconstitutional and is unlawful under *Zadvydas*.  The Court has

jurisdiction under 28 U.S.C. § 2241 to address Petitioner's detention[6] and it is hereby

**ORDERED** that the Petition is **GRANTED** and that Respondents immediately release

Petitioner under an Order of Supervision pursuant to § 1231(a)(3); and it is further

**ORDERED** that Respondents and any of Respondents' officers, agents, servants,

employees, and attorneys, as well as other person acting in concert, are **ENJOINED** from re-

detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the

prospects for removal to a qualifying consenting country;[7] and it is further

**ORDERED** that Respondents file a status report with this Court within three days stating

whether Petitioner has been released and if not, why not; and it is further

**ORDERED** that Petitioner's request for attorney's fees and costs under the Equal Access

to Justice Act, as amended, 28 U.S.C. § 2412, or on any other basis justified under law, is

**DENIED**.[8]

The Clerk is directed to send copies of this Order to all counsel of record.

Alexandria, Virginia
January 20, 2026

Anthony J. Trenga
Senior United States District Judge

---

[6] *See Luna Quispe v. Crawford,* No. 1:25-CV-1471, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025) (concluding that neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this Court of jurisdiction to review the legality of a habeas petitioner's detention),

[7] *See Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018) (alien who had previously obtained *Zadvydas* relief could be re-detained due to changed circumstances rendering her removal significantly likely in the near future).

[8] *See Obando Segura v. Garland*, 999 F.3d 190, 195 (4th Cir. 2021) (a habeas petitioner has no cognizable claim for attorney's fees under the Equal Access to Justice Act ("EAJA") because a habeas proceeding is not a "civil action" under the EAJA; *Luna Quispe*, 2025 WL 2783799, at *6.